IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHANIE L. BOBELU-BOONE,

    Plaintiff,

    v.                                                                                     No. Civ. 20-00688 WJ-KK

ROBERT WILKIE, Secretary of the U.S.
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss for Failure to State Claim, filed on November 2, 2020 **(Doc. 11).** Plaintiff, who is a Native American, is suing Defendant under Title VII alleging that Defendant discriminated against her on the basis of her race by removing her from her position and by creating a hostile work environment. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is granted.

**BACKGROUND**

**I.    Plaintiff's Allegations**

Plaintiff began her employment with the Veterans Administration ("VA") as an Assistant Chief Sterile Process Services employee in December 2002 as a GS-11-4. In December 2017, Plaintiff's Department was inspected by the Office of Inspector General, which resulted in a Corrective Action plan for her department. Plaintiff alleges that after the OIG inspection she was subjected to a hostile environment which consisted of: being made to work overtime and only receiving comp time; being given conflicting directives; being blamed for the poor OIG Inspection;

and being told she should look for other employment. After the OIG Inspection, Plaintiff's supervisor told her that she was being reassigned and told her to clean out her office, and Ms. Boone was then moved to another area.  Compl., ¶¶1-10.

Plaintiff was tasked with implementing parts of the Corrective Action plan based on the results of the inspection and for the next few months, she allegedly worked every weekend to bring the Department into compliance. On April 24, 2018, a surgical procedure had to be rescheduled because there were no scopes that had been sterilized.  Plaintiff had come in the weekend before to conduct inventory and spoke to the day shift supervisor instructing her to have employees sterilize rigid scopes as a priority, but none of the scopes had been sterilized. In May of 2018, she found out that her position was being posted. Plaintiff was called into her Supervisor's Office and was given a note of an investigation. Plaintiff was told it was her fault for the poor OIG inspection and the lack of sterilized equipment. Compl., ¶¶11-15.

Shortly after receiving the notice of investigation, Plaintiff was locked out of her Office and her computer access was denied. Plaintiff was moved to a cubicle and assigned to a different department.  In November of 2018, she was notified that she was being removed from federal service and she requested to be reassigned to another position. Plaintiff asserts that she was only offered a demotion with a significant pay cut and would be a probationary employee for 18 months. On November 30, 2019, Plaintiff was removed from federal service for failure to "communicate the lack of sterilized equipment." She was replaced with a non-Native American.  As a result of Defendant's actions, Plaintiff has suffered harm in the form of lost wages and benefits, as well as alleged emotional distress.  Compl., ¶¶16-21.

Plaintiff asserts a single count of Race Discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., which appears to be based on both her

termination and hostile work environment. *See* Doc. 2 (Compl.), ¶24 ("The discrimination consisted of Defendant having Boone subjected to a hostile work environment and terminating her employment.").[1]

Defendant contends that it did not discriminate against Plaintiff based on race, and that its actions were for legitimate, nondiscriminatory reasons. Defendant also contends that Plaintiff's termination and hostile work environment claims are either untimely are not administratively exhausted.

**II.   Procedural Facts**

Defendant offers the following chronology of procedural facts applicable to this case:

- *January 3, 2019*: Plaintiff contacted a counselor with the Department of Veterans Affairs ("VA") Office of Resolution Management ("ORM") and alleged that a performance evaluation from January 2018 and her removal from her position in November 2018 constituted discrimination on the basis of race. *See* Doc 11-1 (EEO Counselor Report) at 2-3. The EEO Counselor's Report did not document any complaint regarding a hostile work environment stemming from an Office of Inspector General ("OIG") inspection in 2017. *See id*.

- *February 11, 2019*: Plaintiff filed a Complaint of Employment Discrimination with the VA alleging "termination" and a "hostile work environment prior to termination" on the basis of race. *See* Doc. 11-2 (Compl. of Employment Discrimination).

- *April 23, 2019*: the ORM notified Plaintiff that it was partially accepting her complaint for investigation. *See* Doc. 11-3 (Partial Acceptance Letter). The VA dismissed the performance evaluation claim as an "independent actionable claim" because it was untimely but agreed to consider it as evidence of an overall hostile work environment. *Id*.[2] The VA also accepted the termination claim as a "mixed case complaint" because her removal could be appealed to the Merit Systems Protection Board. *Id*. at 2.

---

[1] Plaintiff does not allege a retaliation claim, despite vague reference to "retaliation" in both the complaint and in the Joint Status Report. *See* Doc. 2, ¶¶1, 26; Doc. 16 at 1. There are no facts alleging that Plaintiff engaged in protected opposition to the alleged discrimination, which is a required element of any Title VII retaliation claim. *See Mickelson v. New York Life Ins., Co*., 460 F.3d 1304 (10th Cir.2006); *Smith v. Nw. Fin. Acceptance, Inc*., 129 F.3d 1408, 1413 (10th Cir. 1997). The Court has no reason to believe Plaintiff alleges anything other than discrimination which Plaintiff bases on her termination as well as her alleged hostile work environment.

[2] The ORM's reference to untimeliness pertained to pre-complaint deadlines for federal employees to initiate contact with a counselor regarding an alleged discriminatory practice within 45 days of the occurrence. *See* 29 C.F.R. §1614.107(a)(2).

- *April 28, 2020*: the VA's Office of Employment Discrimination Complaint Adjudication ("OEDCA") issued its Final Agency Decision dismissing the complaint. *See* Doc. 11-4 (Final Agency Decision). The OEDCA concluded that Plaintiff's hostile work environment claim failed because her supervisor had legitimate, nondiscriminatory reasons for her performance evaluation and termination, and Plaintiff "offer[ed] no probative evidence of a nexus between any of management's behavior and her protected class." *Id*. at 3-4. The OEDCA found that Plaintiff's termination claim failed because there was no evidence that the reason for termination was a pretext for discrimination. *Id*. at 5.

  - The Final Agency Decision explained that Plaintiff could file a civil action on the agency's decision on her hostile work environment claim in federal district court within 90 days of receipt of the decision. *See* Doc. 11-4 at 6. Because her termination claim was a "mixed case complaint," the Final Agency Decision stated that Plaintiff could file an action in federal district court on this claim within 30 days of receipt of the decision. *Id*. at 7-8.

- *April 29, 2020*: Plaintiff and her counsel, Donald Gilpin, were emailed copies of the Final Agency Decision ("FAD"). Based on this email date, the FAD would have been deemed received on May 4, 2020.³ After the OEDCA emailed the FAD, no notice was received that the email to either Plaintiff or Mr. Gilpin was undeliverable. *See* Doc. 11-5 at ¶7.

- *July 10, 2020* (68 days after the presumed receipt of the Final Agency Decision): Plaintiff filed her Complaint alleging a hostile work environment and termination on the basis of race in violation of Title VII. *See* Doc. 2 at ¶ 24.

  - The Complaint alleges that "Plaintiff has exhausted her administrative remedies and received her Notice of Right to Sue." *Id*. at ¶ 5.

Plaintiff does not dispute either the dates or the substance of these facts, but rather their legal significance.

## DISCUSSION

Defendant raises several arguments in this motion, which the Court addresses in turn, beginning with exhaustion issues and then ending with Defendant's request to dismiss Plaintiff's hostile work environment claim under Fed.R.Civ.P.12(b)(6).

**I.  Dismissal of Termination Claim as Untimely**

---

³ *See* Doc. 11-4 at 9: noting that "[f]or timeliness purposes, it shall be presumed that the parties received the Final Agency Decision within **five (5) calendar days after it was emailed**." (emphasis added). The certificate of service actually noted that Plaintiff and her counsel were emailed copies of the Final Agency Decision on April 28—not the 29th—but Defendant relies on the April 29th email date.

Defendant contends that Plaintiff's termination claim is untimely under 29 C.F.R. § 1614.310(a) because she filed the federal complaint more than 30 days after receipt of the final agency decision. Plaintiff argues that under 29 C.F.R. §1614.407, she had 90 days, not 30, in which to file the complaint. "Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite" but rather "a condition precedent to suit that functions like a statute of limitations." *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995).

A federal employee "subjected to an adverse personnel action such as a discharge or demotion may appeal her agency's decision to the Merit Systems Protection Board (MSPB or Board)." *Kloeckner v. Solis*, 568 U.S. 41, 43 (2012). When an employee complains of a personnel action serious enough to appeal to the MSPB and also alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a "mixed case." *Id.* at 44 (citing 29 C.F.R. § 1614.302; emphasis in original); *Coffman v. Glickman*, 328 F.3d 619, 622 (10th Cir. 2003) (when an appeal to the MSPB involves claims of unlawful discrimination related to or stemming from the employment action, it is considered a "mixed" appeal) (citing 29 C.F.R. 1614.302(a)(1)).[4] Several avenues are open to a federal employee bringing a mixed case:

> She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do. If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges. If the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review.

---

[4] "A mixed case complaint is a complaint of employment discrimination filed with a federal agency ... related to or stemming from an action that can be appealed to the [MSPB]. . . A mixed case appeal is an appeal filed with the MSPB that alleges an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." *Butler v. West*, 164 F.3d 634, 636 n.2, 638 n.7 (D.C. Cir. 1999) (citing 29 C.F.R. § 1614.302(a)(1)(2) (quotations marks omitted).

*Kloeckner v. Solis*, 568 U.S. 41, 45 (2012) (citations omitted). However, an employee who forgoes appeal to the MSPB and sues in district court must do so "[w]ithin 30 days of receipt of a final decision issued by an agency on a complaint unless an appeal is filed with the MSPB." 29 C.F.R. § 1614.310(a); *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (employee has thirty days of agency final decision in which to file appeal with MSPB or a civil discrimination action in federal district court).

Defendant claims that Plaintiff's termination claim is untimely because Plaintiff filed the Complaint well after the thirty-day deadline applicable to "mixed case" claims as set out in 29 C.F.R. §1614.310(a). Applying the five-day presumption for receipt of the FAD, Plaintiff had thirty days (or until June 3, 2020) to file a civil action as to the termination claim. Because Plaintiff actually filed the complaint on July 10, 2020, over a month *after* the deadline, Defendant contends that the termination claim should be dismissed as untimely. *See Kin v. Shinseki,* 2009 WL 2215079, at *2 (S.D. Tex. July 21, 2009 (dismissing mixed case complaint filed thirty-four days after receipt of final agency decision); *see* Doc. 11 at 6 (citing other cases doing same).

Plaintiff disagrees and offers three challenges to Defendant's motion.

First, she claims that Defendant is confusing the appeal deadline in federal district court with the appeal deadlines in claims filed with the MSPB. However, as Defendant correctly notes, there is no confusion because the thirty-day period applies either way. *See Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (should complainant "elect the agency EEO route, "within thirty days of a final decision she can file an appeal with the MSPB or a civil discrimination action in federal district court") (citing various federal regulations, including 1614.310(a)). In fact, even where a complainant directly appeals to the MSPB instead of the agency EEO office, she still has thirty days from the MSPB's final decision to either appeal the discrimination claim to the EEOC

or to federal district court. 29 C.F.R. §1614.310(b).[5] The Final Agency Decision issued in this case specifically advised Plaintiff of the 30-day deadline:

> This Final Agency Decision on complainant's termination claim may be appealed as follows: (a) to the Merit Systems Protection Board (MSPB) **(not the EEOC)** within 30 calendar days of receipt of this decision . . . or (b) as a civil action complaint filed in an appropriate U.S. District Court within 30 calendar days of receipt of this decision.

Doc. 11-4 at 7 (emphasis in original); *see also* Doc. 11-4 at 8 (noting that under "Claim 2 – Termination" that "the civil action MUST BE FILED WITHIN THIRTY (30) CALENDAR DAYS of the date of receipt of this final agency decision" (emphasis in original). Therefore, there is no question that the 30-day exhaustion period applies here.

Second, Plaintiff argues that she had 90 days under 29 C.F.R. §1614.407, rather than 30 days under §1614.310, in which to file a civil action based on her discriminatory termination claim. Under 29 C.F.R. §1614.407, an individual who files claims for individual relief under Title VII may file a civil action in federal district court "[w]ithin 90 days of receipt of the agency final action." §1614.407(a) (emphasis added). However, the 90-day period applies to a non-mixed case claim only, in which case a federal employee can proceed by initially filing a claim with the EEO department of the employing agency. *Kloeckner*, 568 U.S. at 47 (noting that because plaintiff's case "went forward not under the special procedures for mixed cases, but under the EEOC's regulations for all other charges of discrimination" plaintiff had not suffered a sufficiently serious personnel action such as removal or demotion which would be appealable to the MSPB); *see Coffman v. Glickman*, 328 F.3d 619, 624 (10th Cir. 2003) (administration exhaustion for a federal

---

[5] The party can also appeal the decision to the EEOC, but at that point she would forfeit further consideration of all nondiscrimination claims. *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (citing *Sloan v. West*, 140 F.3d 1255, 1260 (9th Cir.1998)).

employee who follows "the EEO route" falls under 29 C.F.R. §1614.407, which contains the 90-day window for filing a civil action in district court).[6]

Because Plaintiff alleges discrimination as well as an adverse personnel action that was appealable to the MSPB (that is, termination)—as opposed to only charges of discrimination—Plaintiff's complaint is by its nature a "mixed case complaint" which is governed by §1614.407. Plaintiff does not dispute the characterization of her termination claim as a "mixed case claim," nor does she dispute that the agency treated the termination claim as a case as a "mixed case complaint" because her removal could be appealed to the Merit Systems Protection Board. Doc. 11-3 at 2 ("Therefore, this case now constitutes a mixed case complaint").

As her third and last argument, Plaintiff contends that "Defendant is misinterpreting the FAD in an attempted [*sic*] to have Plaintiff's non-mixed claims dismissed under the incorrect appeal deadline to this Court." Doc. 17 at 3. Plaintiff is again mistaken because she misreads Defendant's arguments: Defendant argues only that Plaintiff's mixed case *termination* claim is untimely under the 30-day window and moves for dismissal only as to that claim on those grounds. *See* Doc. 11 at 5-6.

Plaintiff indisputably filed her district court complaint well over 30 days after receiving the FAD, making her mixed case termination claim untimely. Yet she offers the Court no legal or equitable basis to disregard the untimeliness. *Harms v. I.R.S.*, 321 F.3d 1001, 1006 (10th Cir. 2003) ("Dismissal of an untimely filed complaint is warranted unless the plaintiff can show entitlement

---

[6] *See also* Doc. 23 at 3 (citing to other courts holding same): *Cash v. Shinseki*, No. 8:08-CV-743-T-MAP, 2009 WL 10670762, at *3 (M.D. Fla. June 12, 2009) (noting that while a federal employee typically has "90 days from receipt of the agency's FAD to file a civil action in district court, . . . in the processing of a mixed case, however, an employee has only 30 days from receipt of the FAD to file a civil action in district court") (citing 29 C.F.R. §§ 1614.310(a), 1614.407(a); *Wilson v. Harvey*, 156 F. App'x 55, 57 (10th Cir. 2005) (federal employee in non-mixed case claiming race discrimination must first consult an EEO counselor, file a complaint with the offending agency and then either appeal to the EEOC or sue in federal district court within time period allowed under § 1614.407).

to waiver, estoppel, or equitable tolling, which are "narrowly construed."). Plaintiff's mixed case termination claim is therefore dismissed as untimely.

## II.  Whether Hostile Work Environment Claim Was Exhausted

Defendant next contends that Plaintiff failed to exhaust her hostile work environment claim because her claim in the administrative proceedings concerned entirely different facts, and she never raised these new facts alleged in the complaint before an Equal Employment Opportunity ("EEO") counselor.

### A.  Law on Exhaustion

A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (internal quotation marks omitted). Before a federal civil servant can sue his employer for violating Title VII, he must "initiate contact" with an Equal Employment Opportunity counselor at his agency within 45 days of the date of the matter alleged to be discriminatory. *Green v. Brennan*, 136 S. Ct. 1769, 1774 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)).

Exhaustion serves two purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance. *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal quotation marks omitted).  A plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC. *Id.* (internal quotation marks omitted); 29 C.F.R. § 1614.105(b)(1) ("[O]nly the claims raised 45 days prior to the precomplaint counseling may be alleged in a subsequent complaint filed with the agency"); *Showalter v. Weinstein*, 233 F. App'x

803, 804 n.1 (10th Cir. 2007) (aggrieved employee must initiate consultation "within 45 days" of the alleged discriminatory action or "within 45 days of the effective date of [a personnel] action.") (citing § 1614.105(a)(1).

Defendant claims that Plaintiff failed to raise any issues relating to an OIG inspection, working overtime, being given conflicting directives, or being asked to look elsewhere for employment ("post-OIG inspection mistreatment"). These allegations were never presented to the agency EEO office and so it never investigated them.

> B.      Hostile Work Environment Based on Performance Evaluation

Plaintiff presented her claims to the agency EEO office on February 11, 2019 as "Termination" and "Hostile Work Environment Prior to Termination." No specific factual allegations related to hostile work environment were included. Doc. 11-2.[7] The agency's Partial Acceptance Letter, dated April 23, 2019 (Doc. 11-2), described Plaintiff's complaint of discrimination as a global "harassment/hostile work environment" claim consisting of two events:

> 2. Your client's complaint of discrimination raises the following claim:
>
>> Whether complainant was subjected to harassment/hostile work environment (Non-Sexual) based on race (American-Indian) as evidenced by the following events:
>>
>> 1. On or about January 2018, complainant received a fully successful rating on her Executive Career Field appraisal which was not an appropriate rating.
>>
>> 2. On or about November 30, 2018, complainant was removed from federal service.

Doc. 11-3 (Partial Acceptance Letter). The agency dismissed the performance evaluation claim as untimely because it had not been presented within 45 days of the occurrence, but agreed to consider it as "evidence of an overall hostile work environment." *Id.* at 4. Yet, in its Final Agency

---

[7] Plaintiff's initial contact with an agency EEO counselor was on January 3, 2019. The counselor's report described Plaintiff's claim as discrimination based on her termination. *See* Doc. 11-1 at 2. ("[Plaintiff] claims she was subjected to discrimination when she was removed from employment).

Decision—and contrary to what it said it would do—the agency did consider the performance evaluation as an independent claim within its discussion on harassment:

> Here, we find that the weight of the evidence indicates that management's conduct towards your client was due to them acting upon legitimate job-related decisions, rather than her race. First, regarding your client's performance rating (Claim 1), the Associate Director . . . for Patient Care Services testified that your client failed to "*[c]omplete tasks assigned, provide evidence of accomplishments listed in feedback, [or] provide metrics to support her feedback.*

Doc. 11-4 at 3 ("Harassment (Non-Sexual) – Claims 1 – 2") (emphasis in original). Thus, it's clear that the hostile work environment claim was presented to the agency solely on Plaintiff's January 2018 performance evaluation and not on any of the post-OIG mistreatment which she now asserts in her complaint.

### C.  Hostile Work Environment Based on Allegations in Complaint

The Court cannot conclude that Plaintiff has exhausted her hostile work environment claim as alleged in her complaint. The agency expressly rejected Plaintiff's January 2018 performance evaluation claim because it was outside the 45-day window in which to notify its EEO counselor. Doc. 11-3 at 2. The hostile work environment allegations in the complaint refer to events that occurred in early- to mid-2018, and would also be untimely because they are outside the same 45-day window. It appears that the agency did mention Plaintiff's working on weekends and Defendant's offer of another position, but these references were included only in the agency's discussion on the termination claim and were not mentioned at all in the context of the hostile work environment claim. *See* Doc. 11-4 at 4 ("Termination-Claim 2").

Plaintiff argues that she can rely on the post-OIG mistreatment claims as events leading up to her termination, which she timely presented as a claim to the agency. *See* Doc. 17 at 4 ("Plaintiff's allegedly poor OIG inspection, forced to work overtime and only receiving comp time, being given conflicting directives, and being asked to look for another job certainly **relates to the**

**final act of her hostile work environment claim, her termination**") (emphasis added). But Plaintiff cannot use her termination to form part of her hostile work environment claim.

First, the Court has dismissed the termination claim because it was not brought within the 30-day period for a "mixed case claim" to be brought as a civil action in federal court. And because the alleged hostile environment allegations in her complaint ride on the tails of her termination claim (as Plaintiff admits), Plaintiff can no longer argue that the Court should consider allegations that were part of a claim that has been dismissed. Second, and as Defendant notes, while the Tenth Circuit has not addressed the question, the majority of circuits have held that discrete acts like termination cannot form part of a hostile work environment claim. *See, e.g., Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 920 (8th Cir. 2018) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and differ from a hostile environment claim which by its "very nature involves repeated conduct") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (citation omitted).[8]

Plaintiff insists that at the very least, she can use the post-OIG inspection allegations as "background" for a hostile work environment claim, pointing out that the Supreme Court in *Nat'l R.R. Passenger v. Morgan* held that an employee may use "prior acts" that are themselves untimely as background evidence in support of a timely claim. *Id.,* 536 U.S. at 113. This is true, but *Morgan's* holding does not help Plaintiff if she doesn't have a "timely claim" to support in the first place. Plaintiff does not dispute that the "prior acts" relating to the post-OIG mistreatment are themselves untimely, and there are no other allegations in the complaint relating to an

---

[8] In its reply, Defendant provides several other circuits holding the same. Doc. 23 at 5, n.2. These cases rely largely on the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002), which addressed whether a a plaintiff can rely on the continuing-violation doctrine to revive time-barred discrete acts. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 223 (4th Cir. 2016); *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). The Court will not presume to guess what the Tenth Circuit would decide, but these other decisions were helpful in exploring the exhaustion issue which in the end, takes backstage to the Court's disposition of Plaintiff's claims on the merits.

appropriately exhausted hostile work environment claim. This leaves, again, the termination claim which the Court has already concluded cannot be part of Plaintiff's hostile environment claim.

Therefore, Plaintiff has not exhausted her hostile work environment claims because she did not present them to the agency within 45 days of the occurrence of the alleged events.

**III.     Dismissal of Hostile Work Environment Claim Under Fed.R.Civ.P.12(b)(6)**

Defendant's final argument is that even assuming that Plaintiff has exhausted the hostile work environment claim, the complaint does not plausibly allege that any of the alleged harassment constituted discrimination on the basis of race.

A.     Legal Standards

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007), the Supreme Court created a "middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir.2012). Plaintiffs are not required to specifically allege all the elements of a prima facie case of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Nevertheless, "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. "[G]eneral assertions of discrimination and retaliation, without any details whatsoever of events . . . are insufficient to survive a motion to dismiss. While specific facts are not necessary, some facts are." *Id.* at 1193.

The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was

based on the protected characteristic (in this case, race); and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *See Dick v. Phone Directories Co.,* 397 F.3d 1256, 1262–63 (10th Cir. 2005).

A plaintiff alleging a racially hostile work environment must show "a steady barrage of opprobrious racial comment," since "general torment and taunting if not racially discriminatory are not actionable." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (internal quotation marks omitted).

B. <u>Analysis</u>

Defendant contends that Plaintiff did not experience a hostile work environment because (1) her allegations do not rise to the level of severe or pervasive conduct that altered the terms and conditions of her employment, and (2) there is no evidence of any racial animus. Rather, Defendant removed Plaintiff from her position because her "failure to communicate the lack of sterile scopes compromised patient safety." Doc. 11-4 (FAD) at 5.

The Court agrees with Defendant that Plaintiff's complaint does not rise to meet the *Iqbal/Twombly* standard. First, the allegations in the complaint—either singly or collectively—do not suggest that any of Defendant's actions had anything to do with her race. The entirety of events underlying Plaintiff's hostile environment claim is contained in paragraph 9 of the complaint:

> After the OIG Inspection Boone was subject to a hostile work environment. The hostile work environment consisted of being made to work overtime and only receiving comp time. The hostile work environment consisted of being given conflicting directives, being blamed for the poor OIG Inspection, and being told she should look for other employment.

Doc. 2 (Compl.), at ¶9. The first inkling of race comes in form of Plaintiff's conclusory allegations at the end of the complaint:

> 23. Defendant has discriminated against Boone in the terms and conditions of her employment on the basis of her race in violation of Title VII.
>
> 24. The discrimination consisted of Defendant having Boone subjected to a hostile work environment and terminating her employment.

Doc. 2 (Compl.), at ¶¶23-24.

Plaintiff argues that she has presented the minimum "short and plain statement" of her hostile work environment claim and a description of events she considers to be the hostile acts, which is all that is required under Fed.R.Civ.P. 8 and the relevant case law. *See* Doc. 17 (Resp.) at 5 (citing to *Carroll v. Los Alamos Nat. Sec., LLC*, No. CIV 08-0959 JB/ACT, 2009 WL 1255522, at *8 (D.N.M. Apr. 28, 2009) (finding that plaintiff's allegations of discrimination and laying out the events leading to disparate treatment was sufficient in complaint).

This is an alleged race-based hostile work environment case. While Plaintiff is not required to prove racial animus in her complaint, she must still set out facts making it plausible to believe that Defendant's acts were racially motivated. Plaintiff asserts no facts suggesting that Defendant's failure to pay her overtime for weekend work and blaming her for the poor OIG inspection arose from racial animus, and Plaintiff's conclusory announcements in paragraphs 23 and 24 of the complaint are exactly the kind of "labels" that are deemed unacceptable under the *Iqbal-Twombly* standard. *See Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (noting that when retaliation is the sole motivation for conduct, "this retaliatory conduct does not support [a] claim of racially motivated harassment"). [9]

---

[9] In support of her hostile environment claim, Plaintiff includes her allegations in the complaint that she was terminated and then replaced by a non-Native American—but this (as Defendant observes) is the wrong standard for a hostile environment claim. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507(1993) (noting that the Supreme Court has not adopted a test requiring a plaintiff to prove that his replacement does not share his protected attribute).

The Court does not include Plaintiff's termination as part of the hostile work environment analysis for reasons given earlier in this discussion. Also, sliding a termination claim to bolster a hostile work environment claim smacks of bootstrapping. *See Nurridin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) (The "bulk of the 'hostile' events on

Second, the Court finds it impossible to characterize Defendant's treatment of Plaintiff following the OIG inspection as either "severe" or "pervasive" from an objective standpoint. *See Turnbull v. Topeka State Hospital et al.,* 255 F.3d 1238, 1243 (10th Cir. 2001) (Harassing conduct must be "both objectively and subjectively abusive"). As alleged in the complaint, Plaintiff was tasked with correcting deficiencies resulting from the inspection and in the end, despite working overtime, was blamed for failing to do so. A rational person might view Ms. Boone's plight as an undesirable turn of events in her employment with the VA, but would not consider her work environment—as described in the complaint—to constitute "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003).

For both reasons, Plaintiff has not alleged a plausible hostile environment claim in her complaint sufficient to meet the *Iqbal-Twombly* standard, and therefore this claim shall be dismissed as well.

## IV. Plaintiff's Request to Amend

In a single last sentence of the response, Plaintiff requests leave to amend the complaint as an alternative to dismissal. Doc. 17 at 7. The Court acknowledges that requests to amend are normally liberally granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Albers v. Bd. Of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014). However, the Court is not inclined to grant Plaintiff's request here, for two reasons.

---

which plaintiff relies are the very employment actions he claims are discriminatory or retaliatory; he cannot so easily bootstrap discriminatory claims into a hostile work environment claim"); *Edwards v. U.S. E.P.A.*, 456 F.Supp.2d 72, 97 (D.D.C.,2006) ("To the extent that Plaintiff 'bootstrapped' the same conduct from her retaliation claim into her hostile environment claims, such a practice has been discouraged.").

First, the complaint in this case was drafted by Plaintiff's counsel and so it is afforded no leniency in construction as it would be if Plaintiff were proceeding *pro se. See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (holding *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers."). The *Iqbal-Twombly* standard should be familiar enough by now to attorneys who file civil rights cases in federal court. Defendant's motion to dismiss was filed four months ago—which would have allowed Plaintiff's counsel enough time to reassure himself that the complaint was drafted in a way that comports with that standard and if not, then to request leave of Court to amend.

Second, counsel's offhand request does not comply with this Court's local rules requiring a *motion* to amend a pleading as well as a proposed amendment to the pleading. *See* D.N.M.LR-Civ. 15.1. *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999) (holding that a plaintiff's request for amendment "dangling at the end of her memorandum" in opposition to the defendant's motion to dismiss "did not rise to the level of a motion for leave to amend," and the court therefore did not abuse its discretion in failing to address the request).

Third, (and not unrelated to the reason for the Court's local rule), counsel for Plaintiff fails to offer any information regarding the basis for the proposed amendments, leaving the Court as well as opposing counsel without adequate notice of his intentions. *See Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (request for leave to amend "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment. Without this information, the district court is not required to recognize, let alone grant, a motion to amend.").

## CONCLUSION

In sum, the Court finds and concludes that:

(1) Plaintiff filed her district court complaint well over 30 days after receiving the Final Agency Decision, and thus her mixed case termination claim is dismissed as untimely;

(2) Plaintiff did not exhaust her hostile work environment claims because she did not present them to the agency within 45 days of the occurrence of the alleged events;

(3) Even assuming Plaintiff's hostile work environment claim was administratively exhausted, the complaint does not meet the *Iqbal-Twombly* standard setting out a plausible hostile work environment claim; and

(4) Plaintiff's request to amend the complaint is denied.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss for Failure to State Claim **(Doc. 11)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

**A Rule 58 Judgment shall issue separately.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE